IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BOYD BRYANT, on behalf on himself
and all others similarly situated                                          PLAINTIFF

VS.                                    Case No. 05-CV-4028

GENERAL MOTORS CORPORATION
d/b/a Chevrolet, GMC, Buick and Oldsmobile                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Boyd Bryant's Motion to Remand. (Doc. 7) Defendant General Motors Corporation ("GMC") has responded. (Doc. 13) At the request of the Court the parties filed supplemental briefs. (Docs. 16, 17, 18, and 19) The Court finds the motion ripe for consideration.

## I.  BACKGROUND

On February 4, 2005, Bryant filed a putative class action complaint[1] against GMC in the Circuit Court of Miller County, Arkansas alleging causes of action for breach of implied warranty of merchantability, breach of express warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308, et seq., strict liability, failure to warn and fraud. Bryant served GMC with the complaint on March 8, 2005. GMC removed the case to this Court on April 7, 2005, stating this Court has jurisdiction over the matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 ("CAFA"). Bryant then filed the pending motion to remand.

The factual basis of Bryant's complaint is that from 1998 through 2004 GMC distributed

---

[1] Doc. 1, Ex. 1.

vehicles with a defective parking brake.[2] Part of the complaint reads:

> There is a well defined commonality of interests in common questions of law and fact that affect Class Members. As to the Class, there are common questions of law and fact which predominate over any questions affecting individual Class Members which include, but are not limited to:. . .
>
> o) Whether remediation and removal of the parking brakes is the appropriate remedy to Class Members;. . .
>
> q) Whether Class Members are entitled to an injunction requiring [GMC] to cease and desist from selling, marketing, distributing, and/or placing into the stream of commerce its defective products;
>
> r) Whether [GMC] shall be enjoined from manufacturing, marketing, selling, distributing, and/or placing their defective products into the stream of commerce without adequate safety measures to prevent injury, harm, and/or damage caused by the product;
>
> s) Whether [GMC] shall be enjoined from selling, marketing, and/or distributing their products without safety modifications. . .[.][3]

Another part of the complaint reads:

> The Class Action is not only the appropriate method for the fair and efficient ajudication of the controversy, but it, in fact, [sic] superior method to all other available cause of action because. . .injunctive relief will be available to protect all future consumers from the sale, marketing, and/or distribution of unreasonably dangerous product.[4]

The complaint asked for relief as follows:

> a) Certify that this cause of action as a class action pursuant to A.R.C.P. 23 and appoint [Bryant] as Class representatives [sic] and [Bryant's] counsel as Class counsel;
>
> b) Award appropriate monetary damages to [Bryant] and the proposed Class in an amount equal to obtain a safe parking lot brake; provided

---

[2] *Id.* at ¶ 6.

[3] *Id.* at ¶ 13(o), (q)-(s).

[4] *Id.* at ¶ 16(j).

        that [Bryant] seek [*sic*] less than $75,000 total to recover for each Plaintiff and/or Class Member;

c)       Awarding restitution to [Bryant] and the proposed class in an amount equal to the cost of replacement performed prior to the filing of this cause of action due to the premature failure of the defective brakes provided that Plaintiffs seek less than $75,000 total to recovery [*sic*] for each Plaintiff and or [*sic*] Class Member;

d)       Awarding pre-judgment interest to prevent [GMC] from receiving unjust enrichment from their improper conduct; provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and/or Class member;

e)       Awarding reasonable and necessary attorneys' fees and costs to Class counsel; provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and/or Class Member; and

f)       Awarding such other and further relief in law or in equity as the Court determines fair, reasonable, appropriate, and/or just deems just (sic.); provided that Plaintiff is not seeking punitive damages or any form of exemplary damages on behalf of themselves or the class; and that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and/or Class Member.[5]

Bryant argues diversity of citizenship jurisdiction does not exist because (1) the amount in controversy is less than $75,000, (2) if Bryant, as class representative, satisfies the amount in controversy, this Court does not have supplemental jurisdiction over the class members claims, and (3) CAFA does not apply to this suit.

## II. DISCUSSION

**A.**    **Supplemental Jurisdiction and *Exxon Mobil Corp. v. Allapatah Services, Inc.*, 125 S.Ct. 2611, \_\_\_\_ U.S. \_\_\_\_ (2005)**

The Court will consider the first two arguments in light of the recent United States Supreme Court's decision in *Exxon Mobil Corp. v. Allapatah Services, Inc.*, 125 S.Ct. 2611,

---

[5] *Id.* at ¶ 52(a)-(f).

3

____ U.S. ____ (2005). The Court held under 28 U.S.C. § 1367, a federal court sitting in diversity may exercise supplemental jurisdiction over additional plaintiffs who fail to satisfy the minimum amount in controversy requirement, as long as other elements of diversity jurisdiction are present, at least one named plaintiff satisfies the amount in controversy requirement, and the additional plaintiffs' claims are part of the same case or controversy as those of plaintiffs who allege a sufficient amount in controversy. *Id.*, 125 S.Ct. at 2620-1, ____ U.S. at ____. Under *Exxon Mobil*, if Bryant, standing alone, satisfies the amount in controversy requirement, the Court may exercise supplemental jurisdiction over the putative class members claims. Therefore, the Court will turn its analysis to the issue of whether Bryant's claims satisfy the amount in controversy requirement for diversity of citizenship jurisdiction. Bryant argues costs associated with the expense of a class notice do not count toward the amount in controversy, and his request for injunctive relief does not establish the requisite amount in controversy.

**B.      Amount in Controversy**

    **1.      Cost of Class Notice**

GMC admits in its response[6] that Bryant's potential compensatory damages and claim for attorneys fees would not satisfy the $75,000 amount in controversy, but argues the expense of class notice elevates Bryant's claim above amount in controversy threshold.[7] GMC relies on Ark. R. Civ. P. 23(c), which states, in part

---

[6] The response states, "[GMC's] argument is that the amount in controversy for the *named Plaintiff* [Bryant] satisfies the $75,000 threshold. Although any potential compensatory damages and attorneys' fees attributable to the named Plaintiff [Bryant] would satisfy a portion of the $75,000 requirement, that is not the focus of [GMC's] removal argument. The focus is on the class notice expense." Doc. 13, p. 7.

[7] GMC asserts the size of the proposed class would be over 8.7 million people, and the Court has no doubt the size of the proposed class would reach into the millions. If the entire class was then notified of this suit by first-class mail, then the cost of notice would obviously be greater than $75,000.

> In any class action in which monetary relief is sought, including actions from damages and restitution, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort...The cost of such notice shall be borne by the representative parties; provided however, that the court may shift all or part of such cost to the opposing party or parties if the case is settled or the class representative substantially prevails on the merits.

Ark. R. Civ. P. 23(c) is similar to the practice in federal court. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140 (1974)(stating the usual rule is that a plaintiff in a class action must initially bear the cost of notice to the class, with certain exceptions).

The express language of § 1332(a) states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and *costs*. . ." (emphasis added). The parties and the Court have found no case law holding whether or not the cost of class notice in a putative class action counts toward establishing the amount in controversy. The Court believes the express wording of § 1332(a) means the cost of class notice should not be used to reach the requisite amount in controversy. GMC argues the definitions of "costs" is limited to those costs expressly listed in 28 U.S.C. § 1920. Since class notification is not listed in 28 U.S.C. § 1920, GMC argues the cost of class notice can count toward the amount in controversy. The Court does not believe "costs" in § 1332(a) should be limited to those costs listed in § 1920. Section 1920 merely states which costs may be taxed to a party as costs. The thrust of excluding "costs" in establishing the amount in controversy under § 1332(a) is to exclude those expenditures a party normally incurs when filing a lawsuit. Therefore, the Court finds the cost of class notice, whether borne by the class representative or class members, should not be considered when determining whether the requisite amount in controversy exists under § 1332(a).

2. **Injunctive Relief**

a. **Common and Undivided Interest**

The next issue the Court must address is whether Bryant's claim for injunctive relief may be aggregated with her other claims to meet the amount in controversy.

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508 (1973) *quoting Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41, 32 S.Ct. 9 (1911). The law on this point has developed so that the general rule is an individual class member's distinct claims may not be aggregated to satisfy the amount in controversy requirement for diversity jurisdiction. *See Kessler v. National Enterprises, Inc.*, 347 F.3d 1076 (8thCir.2003); *Crawford v. F. Hoffman-LaRoche Ltd.*, 267 F.3d 760 (8thCir.2001); *Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.3d 246 (8thCir.1987). The exception to the general rule allows claims to be aggregated to satisfy the amount in controversy requirement when class members sue jointly to enforce a common title or right to which they have common and undivided interest. *Kessler*, 347 F.3d at 1079; *see also Crawford*, 267 F.3d at 765; *Burns*, 820 F.3d at 250. An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased. *Kessler*, 347 F.3d at 1079.

In this case, Bryant and each putative class member's allegations for damages and injunctive relief stems from individual purchases of automobiles with allegedly defective parking brakes manufactured by GMC. If a class member were to recover damages for the automobiles

with defective parking brakes, another class member's damages would not be reduced. With respect to injunctive relief, most, if not all, of the injunctive relief sought would not establish "shares" for the class members to divide. The requested injunctive relief would not create a shared fund for class members to divide among themselves. This situation is analogous to *Kessler* and *Burns*. In *Kessler*, 347 F.3d 1079-80, the Eighth Circuit Court of Appeals held the exception to the general aggregation rule did not apply to claims asserted by condominium owners in a class action suit seeking rescission of their time-share purchase agreements. Each owner sought to enforce rights obtained through individual contracts with the condominiums' developer and any recovery by one class member would have no effect on the amount recoverable by another member. In *Burns*, 820 F.3d at 250-1, the Eighth Circuit held the exception to the general aggregation rule did not apply to claims asserted by insureds who had not accepted their insurance company's offer to exchange their right to obtain loans at a low interest rate for the right to receive higher dividend payments. Each insureds' claim stemmed from the purchase of separate and distinct insurance policies. *Id.* The insureds sought to enjoin the insurance company from distributing dividends in the future under its dividend policy. *Id.* Other district courts within the Eighth Circuit have been slow to apply the exception to the general aggregation rule. *See e.g. Morinconi v. AT & T Wireless PCS, LLC*, 280 F.Supp.2d 867 (E.D.Ark.2003); *Webb v. American International Group, Inc.*, 277 F.Supp.2d 1014 (E.D.Ark.2003). The Court finds Bryant's claim for injunctive relief cannot be aggregated to satisfy the amount in controversy requirement.

### b. Value of Injunctive Relief

Still, Bryant's claim for injunctive relief can satisfy the amount in controversy if the claim can be valued at $75,000 or more. Whether the injunctive relief is valued at $75,000 or more is a matter of perspective. The Court has no doubt the injunctive relief sought by Bryant is worth a great deal less than $75,000 to him. If he obtains the injunctive relief sought GMC will be required to stop supplying automobiles with the alleged defective parking brake. This relief is of little monetary value to Bryant. On the other hand, the Court has no doubt the cost to GMC of complying fully with the injunctive relief would far exceed $75,000. The injunctive relief would possibly require GMC to redesign the alleged defective parking brake before distributing an enormous number of GMC automobiles. GMC would have to reevaluate the safety of certain automobile models. GMC has proven to the Court their costs would exceed $75,000 by the affidavits of Steven Freeland, Manager of North American Region for Sales Reporting and Data Management Organization for GMC, Gary P. Kent, Director of Investigations for GMC, and Cameron Azari, Director of Huntington Legal Advertising.[8] Therefore, whether the amount in controversy requirement for diversity jurisdiction exists depends on whether the value of injunctive relief is measured from Bryant or GMC's perspective.

In an action seeking injunctive relief, the amount in controversy for jurisdictional purposes is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434 (1977). As in *Hunt,* sometimes identifying the "object of the litigation" is easy. However, in cases like these, identifying the "object of the litigation" depends on the effect of the relief sought on the adversarial parties.

---

[8] Doc. 13, Exs. A, B, C.

For the purpose of determining whether the amount in controversy exists in diversity cases, the Eighth Circuit has decided to measure injunctive relief by the value to the plaintiff of the right sought to be enforced. *See Burns*, 820 F.2d at 248. The Eighth Circuit recently reinforced this precedent. *See James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828 (8th Cir.2005). The Second, Third, and Eleventh Circuits also explicitly agree. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir.2003); *Packard v. Provident Nat. Bank*, 994 F.2d 1039 (3d Cir.1993); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.3d 82 (2nd Cir.1991). The Seventh, Ninth, and Tenth Circuit allow courts to view the cost of compliance to the injunction by the defendant when determining whether the amount in controversy is met. *See Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978 (7th Cir.2002); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952 (9th Cir.2001); *Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores, Inc.*, 605 F.2d 11155 (11th Cir.1979). Other circuits have not explicitly addressed the issue.

The Court feels bound to adhere to the Eighth Circuit precedent. The Court notes GMC's argument that the Eighth Circuit has not completely foreclosed the idea of considering the "cost of compliance" for possible injunctive relief when determining the amount in controversy. However, reading all of the Eighth Circuit opinions regarding aggregation of class members' claims to reach the requisite amount in controversy shows a common thread of strictly defending the idea that federal courts are courts of limited jurisdiction. The Court is hesitant to find itself in the position of the district court in *Kessler* and have an eventual resolution of this lawsuit thrown out on appeal because it lacked subject matter jurisdiction at the beginning of the suit. The Court's hesitance is heightened by the absence of Eighth Circuit precedent allowing

consideration of GMC's "cost of compliance" argument. The Court finds the value of Bryant's injunctive relief is far below $75,000 and the requisite amount in controversy does not exist on this basis. The Court finds the requisite amount in controversy under 28 U.S.C. § 1332(a) does not exist in this case, and therefore the Court lacks jurisdiction based on diversity of citizenship.

**C.     CAFA**

GMC also believes this Court has jurisdiction over this lawsuit under CAFA. Section 9 of CAFA states, "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." 119 Stat. at 14. The date of enactment of CAFA is February 18, 2005. *Id.* at 4. This suit began on February 4, 2005, when Bryant filed his putative class action complaint in the Circuit Court of Miller County, Arkansas. GMC received service of process on March 8, 2005 and removed this case to this Court on April 7, 2005. Therefore, whether CAFA is applicable to this civil action depends on whether this civil action was "commenced" on February 4, 2005, the date it was filed in the Circuit Court of Miller County, Arkansas, March 8, 2005, the date of service of process, or on April 7, 2005, the date it was removed to this Court.

Removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941); *see also Nichols v. Harbor Venture, Inc.*, 284 F.3d 857 (8th Cir.2002). In *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir.2005), the Tenth Circuit Court of Appeals strictly construed § 9 of CAFA, holding the term "commenced" in that section refers to the date the civil action was first filed in state court, not the date that it was removed to federal court. The *Pritchett* Court first looked to the language of the statute. *Pritchett*, 404 F.3d at 1235. It observed that traditionally, but with some exceptions, under Fed. R. Civ. P. 3, a civil

action is commenced when it is first brought in an appropriate court. *Id.* In a much earlier case, a district court in Texas observed, "A suit must commence somewhere. It can't be removed until it has been commenced. You can't remove something that does not exist." *Barron v. American Motorists Ins. Co.*, 170 F.Supp. 412, 414 (N.D.Tex.1958).

To the extent the term "commenced" is ambiguous, the *Pritchett* Court analyzed legislative history of CAFA and found the history to be persuasive in giving the term a narrow construction. *Id.* at 1235-7. The removal provisions in the original bill presented in the House of Representatives applied to both cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *Id.* at 1235-6, *citing* H.R. 516, 109th Cong. § 7 (2005). Neither the Senate's version of the bill nor the final statute passed by both houses of Congress allowed removal of civil actions certified on or after the enactment date. *Id.* at 1236, *citing* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. It is clear then that Congress' intent was to narrow the removal provisions of CAFA from the broader language in the House's version. Also, two statements from sponsoring legislators, Senator Dodd and Rep. Goodlatte, indicate CAFA was not designed to apply to currently pending civil actions. *Id.* at 1236, *citing* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[CAFA] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merk in the wake of the Vioxx withdrawal.") The *Pritchett* Court observed floor statements are usually given little weight when construing statutes, but these statements were consistent with a

11

normal statutory construction analysis. *Id.* at 1236-7.

As noted in *Pritchett*, GMC's argument that "commence" for removal purposes means the date of removal is supported by a line of cases interpreting the term when Congress increased the amount-in-controversy requirement for diversity of citizenship cases. *Id.* at 1237-8, *citing Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 170 F.Supp. 412 (D.C.Tex.1958); *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 WL 192483, *5-6 (D.Haw. July 30, 1990) (unpublished). Contemporaneous authority analyzing similar cases, however, concluded "commenced" meant the date of filing in state court. *Kieffer v. Travelers Fire Ins. Co.*, 167 F.Supp. 398 (D.Md.1958); *see also Rhinehart v. Cincinnati, Inc..*, 176 F.Supp. 7 (E.D.Mich.1989). Since these cases did not interpret CAFA, the *Pritchett* Court believed these cases were only relevant by analogy, and concluded cases like *Lorraine Motors* actually supported a construction of "commenced" as being the date of filing. *Pritchett*, 404 F.3d at 1237.

This Court agrees with the *Pritchett* decision and GMC, while making the best arguments it can, has not changed the Court's mind. The Court does believe this is the type of class action Congress now intends to be heard in federal court by expanding a district court's jurisdiction over putative class action suits. However, the Court cannot ignore the solid legal analysis of *Pritchett* and decide it has jurisdiction over this case. Also, the Court is mindful that this case, unlike *Pritchett*, was removed within the 30 day deadline set forth in 28 U.S.C. § 1446(b). The public policy section of the *Pritchett* decision is, therefore, inapplicable to this suit. *See Pritchett*, 404 F.3d at 1238. However, the fact that GMC timely complied with § 1446 has little bearing on the statutory construction of the term "commenced" in § 9 of CAFA. The Court does

not believe this action was "commenced" on the date GMC was served with process or the date GMC removed it to this Court. Instead, the Court finds this action was "commenced" for the purposes of CAFA on February 4, 2005, when Bryant filed its complaint in the Circuit Court of Miller County. The Court finds CAFA does not apply to this case, and CAFA does not give this Court jurisdiction over this matter.

### III. CONCLUSION

For reasons states herein and above, the Court finds Bryant's Motion to Remand should be and hereby is **granted.** This case is hereby remanded to the Circuit Court of Miller County, Arkansas.

IT IS SO ORDERED, this 12th day of September, 2005.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Court